Argued and submitted March 17, reversed and remanded for reconsideration November 12, 1986

H & L CARE CENTERS, INC.,
dba Har-Lyn Care Center,
*Petitioner,*

*v.*

SENIOR SERVICES DIVISION,
Department of Human Resources,
*Respondent.*

(CA A35049)(control)

SOUTHEAST CARE CENTERS, INC.,
*Petitioner,*

*v.*

SENIOR SERVICES DIVISION,
Department of Human Resources,
*Respondent.*

(CA A36702)
(Cases consolidated.)

728 P2d 33

Peter E. Baer, Gresham, argued the cause and filed the brief for petitioners.

Douglas F. Zier, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Petitioners in these consolidated cases are the current owners and the former owners of Southeast Care Center (now Har-Lyn Care Center), an 80-bed residential care facility. They seek review of two final orders issued by the Senior Services Division (Division) concerning the agency's disallowance of certain claimed operating expenses for which petitioners seek reimbursement under Medicare.

Six assignments of error are asserted, only one of which warrants discussion. In 1963, Zada Treadwell purchased what is now Har-Lyn Care Center. In 1965, the facility was substantially enlarged, and Treadwell Nursing, Inc. was formed to operate the business. Zada and her husband retained sole ownership of the real property and improvements (property). In 1977, the corporate name was changed to Southeast Care Center, Inc. (SCC). At that time, Zada was sole owner of the property and also owned 75 percent of the corporate stock. In 1979, Zada sold the property to Resort Marketing, Inc. (RMI), which, in turn, leased it to SCC for $7,250 per month; before the transfer, the rent paid by SCC had been $2,500 per month, payable to Zada. At the time of the sale, Zada's son, John Burke, was the sole owner and president of RMI and the president of SCC. The present controversy concerns, in part, Division's treatment of the sale and its consequent effect on the computation of SCC's reimbursable expenses under Medicare.

The hearings officer found that, at the time of the sale, a "related-party relationship" existed between SCC and RMI and, on that basis, ruled that SCC's reimbursable costs were to be determined in accordance with OAR 461-17-335(1) (now OAR 411-70-335(1)). Petitioners concede that a related-party relationship existed but contend that the hearings officer incorrectly failed to apply the exception to the general rules applicable to related organizations provided in OAR 461-17-335(2) (now OAR 411-70-335(2)).

OAR 411-70-335 provides, in relevant part:

"(1) Costs applicable to services, facilities, and supplies furnished to a provider by organizations related to the provider by common ownership or control are allowable at the lower of cost excluding profits and markups to the related party or charge to the facility. Such costs are allowable to the

extent that they relate to patient care, are reasonable, ordinary, and necessary, and are not in excess of those costs incurred by a prudent cost-conscious buyer. Documentation of costs to related parties shall be made available at time of audit. If documentation is not available, such payments to or for the benefit of the related organization will be non-allowable costs.

"(2) An exception is provided to the general rule applicable to related organizations. The exception applies if the provider demonstrates by convincing evidence to the satisfaction of the Division:

"(a) That the supplying organization is a bona fide separate organization; and

"(b) That a substantial part of the supplying organization's business activity, of the type carried on with the provider, is transacted with other organizations not related to the provider and the supplier by common ownership or control and there is an open, competitive market.

"(3) Rental expense paid to related organizations for facilities or equipment shall be allowable to the extent the rental does not exceed the related organization's cost of owning (e.g., depreciation, interest on a mortgage), or leasing the assets, computed in accordance with the provisions of these rules."

Having found that SCC and RMI were related organizations, the hearings officer made no express findings of fact concerning the applicability of the exception to the general rules regarding such organizations, although the issue was raised by petitioners. The "findings" merely state that a related-party relationship does exist "as defined under OAR 461-170-010(19) [now OAR 411-70-005(32)],"[1] and that, accordingly, "the Financial Audit Unit and Southeast Care Center, Inc., are to base adjustments at the lower cost excluding profits, as required under Administrative Rule 461-17-335(1)." Because the applicability of the exception was

---

[1] OAR 411-70-005(32) provides:

"An entity which, to a significant extent, is under common ownership and/or control with, or has control of, or is controlled by the contractor. An entity is deemed to 'control' another entity if it has a significant ownership interest in the other or if it has capacity derived from any financial or other relationship and whether or not exercised to influence directly or indirectly the activities of the other."

a contested issue, the hearings officer's findings of fact and conclusions of law with respect to the related parties issue are incomplete and insufficient for judicial review. ORS 183.470(2). Accordingly, we remand for further findings regarding that issue only.

Reversed and remanded for reconsideration not inconsistent with this opinion.